IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MÁXIMA ACUÑA-ATALAYA, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | C.A. No. 17-1315-GAM |
| v. ) | |
| ) | |
| NEWMONT MINING CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**SUPPLEMENTAL DECLARATION OF MARIO CASTILLO FREYRE TO REPLY BRIEF OF DEFENDANTS NEWMONT MINING CORPORATION, NEWMONT SECOND CAPITAL CORPORATION, NEWMONT USA LIMITED, AND NEWMONT PERU LIMITED IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT ON THE GROUNDS OF *FORUM NON CONVENIENS***

*Of Counsel:*

**LATHAM & WATKINS LLP**
Michael G. Romey
Monica R. Klosterman
Faraz R. Mohammadi
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: (213) 891-7591
Facsimile: (213) 891-8763
michael.romey@lw.com
monica.klosterman@lw.com
faraz.mohammadi@lw.com

Dated: December 11, 2017

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Elena C. Norman (No. 4780)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
enorman@ycst.com
rvrana@ycst.com

*Counsel for Defendants*

Estudio Mario Castillo Freyre

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CIVIL ACTION N° 17-1315
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

MÁXIMA ACUÑA-ATALAYA;
DANIEL CHAUPE-ACUÑA;
JILDA CHAUPE-ACUÑA;
CARLOS CHAUPE-ACUÑA;

YSIDORA CHAUPE-ACUÑA, personally and on behalf of her minor child M.S.C.C.;

ELIAS CHAVEZ-RODRíGUEZ, personally and on behalf of his minor child M.S.C.C.;

M.S.C.C., a minor by his guardians YSIDORA CHAUPE-ACUÑA and ELIAS CHAVEZ-RODRIGUEZ;
MARIBEL HIL-BRIONES;
*Plaintiffs,*

v.

NEWMONT MINING CORPORATION,
NEWMONT SECOND CAPITAL CORPORATION,
NEWMONT USA LIMITED., and
NEWMONT PERU LIMITED.
*Defendants*

**SUPPLEMENTAL AFFIDAVIT OF**
**MARIO CASTILLO FREYRE**

1

Avenida Arequipa 2327
Lince, Lima 14, Perú
Central: (51-1) 200-9090
Teléfono: (51-1) 422-6152, (51-1) 441-4166
E-mail: estudio@castillofreyre.com
www.castillofreyre.com

Estudio Mario Castillo Freyre

## SUPPLEMENTAL AFFIDAVIT OF
## MARIO CASTILLO FREYRE

I, Mario Castillo Freyre, state the following:

1. I have been called as witness in the judicial procedure initiated by Máxima Acuña-Atalaya de Chaupe and her family (hereinafter, the Plaintiffs) against Newmont Mining Corporation, Newmont USA Limited, Newmont Second Capital Corporation and Newmont Peru Limited (hereinafter, the Defendants).

My participation as an experienced lawyer or expert is based on my expertise in Civil Law.

I enclose my curriculum vitae as an Attachment.

I formulate my statement on behalf of the Defendants.

1. Having seen the report of the legal experts of the Plaintiffs, lawyers Juan Carlos Ruiz Molleda and Mario Gastón Fernández Cruz, I would like to make the following comments:

### A.  WITH REGARD TO THE COMMENTS OF MR. JUAN CARLOS RUIZ MOLLEDA

### I.  Article 2058 establishes that the competent courts are the Peruvians

2. In the absence of express agreement of the parties on the applicable legislation and jurisdiction, Article 2058[1] of the Peruvian Civil Code, whose numeral 2

---

[1] Article 2058.- "The Peruvian courts have competence to hear complaints arising from the exercise of patrimonial content actions even against persons domiciled in a foreign country, in the following cases: […]
2. When actions related to obligations that must be executed in the territory of the Republic or that arise from executed contracts or of facts carried out in said territory are dealt. In the case of civil actions arisen from crimes or faults perpetrated or whose results have occurred in the Republic, this competence is considered exclusive.

2

Avenida Arequipa 2327
Lince, Lima 14, Perú
Central: (51-1) 200-9090
Teléfono: (51-1) 422-6152, (51-1) 441-4166
E-mail: estudio@castillofreyre.com
www.castillofreyre.com

Estudio Mario Castillo Freyre

determines that Peruvian courts are competent to resolve any claim for civil liability that have for purposes of the alleged damages that Yanacocha would have generated and that it is intended to impute to the Defendants for alleged control or lack of supervision. This is because both, the facts on which the claims of the Plaintiffs are supported and the alleged results that are the subject of such claims, would have been occurred in Peruvian territory. This has been explained in my statement dated October 16, 2017.

3. In this sense, what is argued by the aforesaid legal expert is illogical in the extreme in which he points out that there is no explicit Peruvian law that allows exercising jurisdiction to a foreign defendant based outside of Peru. And it is illogical because, regardless of whether the legal expert has known or not a case in which that disposition has been applied, the provision contained in numeral 2 of Article 2058 explicitly provides as a rule that in the cases arising from the exercise of actions of patrimonial content, the Peruvian courts can be competent even in cases in which the defendant is a person domiciled in a foreign country.

4. It should be noted that this rule is not a "declaration", as indicated by the legal expert, but it is a provision of mandatory and immediate application from which it is not possible to withdraw at will. Numeral 2 of Article 2058 establishes positive jurisdictional authority over non-domiciled Peruvian jurisdictions for actions that derive from events in Peru and is not a programmatic provision that requires further implementation.

5. On the other hand, the legal expert declares that the facts that would have caused the damages alleged by the Plaintiffs would not have occurred in Peru, since the supposed decisions of the defendants would have been taken from the United States, the domicile of the Defendants. He states that this is an obstacle to maintain that the applicable jurisdiction is the Peruvian.

6. I do not share the position of the legal expert, based on an assumption that I consider wrong. As I have indicated in my Statement dated October 16, 2017, I am convinced that as the demand has been raised, the principle of reasonable proximity is met.

7. In this regard, it should be noted that although the domicile of the defendant is the general criterion for the jurisdiction of the Peruvian courts, there are cases in which the defendant is not domiciled; the latter has a sufficient link to be *sublitis* summoned to appear before the Peruvian judges. This responds to what in doctrine is

[…]".

3

Avenida Arequipa 2327
Lince, Lima 14, Perú
Central: (51-1) 200-9090
Teléfono: (51-1) 422-6152, (51-1) 441-4166
E-mail: estudio@castillofreyre.com
www.castillofreyre.com

Estudio Mario Castillo Freyre

known as the principle of reasonable proximity. It is permitted that a non-domiciled person can be summoned before the courts of another State if a connection of the relation referred to in the process is made, which allows maintaining that there exists a reasonable connection between the defendant and the State.[2]

8. In that sense, given that in the case subject of consultation there is a reasonable proximity of fact between what is claimed and the Peruvian jurisdiction, the corresponding authority to hear the case is Peruvian.

9. This reasonable proximity of fact occurs inasmuch as the supposed action that would have caused damages to the Plaintiffs could only have occurred in Peru, especially when all the alleged affectations derive from a conflict over lands located in Peru. In addition, because those acts of the Defendants that allegedly caused damage to the Plaintiffs occurred within the Peruvian territory. The alleged control or lack of supervision that would have directed or allowed Yanacocha or its dependents to harm the Plaintiffs could only be carried out within the Peruvian territory.

10. In the same vein, I must contradict the statement made by the legal expert. He states that jurisdiction cannot be resolved by the simple promise made by a foreign defendant to submit to Peruvian laws. However, according to numeral 3 of Article 2058 of the Peruvian Civil Code, the Peruvian courts have competence to hear complaints arising from the exercise of patrimonial content actions even against persons domiciled in a foreign country, "When the parties expressly or tacitly submit to their jurisdiction". Therefore, by application of numeral 3 of Article 2058,[3] the Defendants can submit to Peruvian jurisdiction and avoid any problems regarding the competence of the courts.

11. In any case, it should be remembered that even in the event that the promise of the defendants does not exist, by application of numeral 2 of Article 2058 of the Peruvian Civil Code, the jurisdiction is Peruvian and this provision does not require further legislative development for its enforcement.

---

[2] Tovar Gil, María del Carmen. "Competencia en acciones patrimoniales". (*Competence in patrimonial actions*). In *Código Civil comentado* (*Civil Code commented*). Lima: Gaceta Jurídica, 2005, tome X, p. 711.
[3] Article 2058.- "The Peruvian courts have competence to hear complaints arising from the exercise of patrimonial content actions even against persons domiciled in a foreign country, in the following cases:
[…]
3. When the parties expressly or tacitly submit to their jurisdiction. Unless otherwise agreed, contemporaneous or prior to submission, the court's choice is exclusive.
[..]."

4

Avenida Arequipa 2327
Lince, Lima 14, Perú
Central: (51-1) 200-9090
Teléfono: (51-1) 422-6152, (51-1) 441-4166
E-mail: estudio@castillofreyre.com
www.castillofreyre.com

Estudio Mario Castillo Freyre

12. On the other hand, the legal expert declares contradictorily that the parties must abide by the competence previously determined by law. In this regard, I must point out that I agree with that premise, but I disagree in its conclusion, because the competence previously determined by law is the Peruvian jurisdiction and it is not an extension of competence that must be determined by the discretion of a judge. There is no risk whatsoever in the strict application of numeral 2 of Article 2058 of the Peruvian Civil Code.

II. **The stipulation in numeral 2 of Article 2058 of the Peruvian Civil Code cannot be waived because of the circumstances that the legal expert points out**

13. As I stated, is perfectly possible the Defendants submit to the Peruvian jurisdiction and, by application of the numeral 3 of article 2058 of the Civil Code, nobody could question the competence of Peruvian courts based on the fact they are persons domiciled in a foreign country. However, in this case, that is not necessary because the competence of the Peruvian jurisdiction derive from the principle of reasonable proximity, which is regulated by the numeral 2 of the same Article.

14. In application of numeral 2 of Article 2058 of the Peruvian Civil Code, there is no risk that a claim for compensation in Peru will be declared inadmissible *in limine* because of competence.

15. From this premise, I must emphasize that the Peruvian jurisdiction cannot be set aside by virtue of opinions regarding the circumstances in which the Peruvian Judicial Branch supposedly stands, since the circumstances alleged in no way are factors that can be qualified as impediments for the Peruvian courts to solve the case according to law.

16. The legal expert declares that the most corrupt political party in recent times has the majority of members in Congress and that such a majority is being used abusively. Regarding the truth of such affirmations, it is not appropriate to pronounce, because this is a legal opinion and not a political manifesto; nevertheless, it is important to point out that, according to Article 43 of the Political Constitution of 1993, the Peruvian State is organized according to the principle of the separation of powers. In this way, the Judiciary is independent of the Legislative Power and the legal expert's claim lacks support.

5

Avenida Arequipa 2327
Lince, Lima 14, Perú
Central: (51-1) 200-9090
Teléfono: (51-1) 422-6152, (51-1) 441-4166
E-mail: estudio@castillofreyre.com
www.castillofreyre.com

Estudio Mario Castillo Freyre

17. Likewise, the legal expert emphasizes the proliferation of bribes and corruption of the judicial system, but fails to point out that in May of 2017 the Plaintiffs won a judicial process that they maintained with Yanacocha (the company through which the Defendants supposedly would be acting in a manner contrary to law). The judicial system criticized by the legal expert and that supposedly does not keep guarantees, is the same one that sentenced in favor of Máxima Acuña and declared groundless the cassation appeal filed by Yanacocha.[4]

18. Notwithstanding the fact that the Defendants' own experience contradicts what was alleged by the legal expert, it is important to point out that the fact that like any judicial system in the world, the Peruvian judicial system is not perfect, does not mean that in Peru is unfeasible to obtain justice. In any case, I must emphasize that competence is not determined by comparing judicial systems to establish which is faster, less expensive or has fewer imperfections.

19. On the other hand, the legal expert declares that Peru is a dangerous country for lawyers like him, who are dedicated to human rights and the environment. However, it does not account for any experience of his own, but rather refers to other events that occurred in 2012.

20. In 2008 the Environmental Assessment and Enforcement Agency (*Organismo de Evaluación y Fiscalización Ambiental* (hereinafter, OEFA)) was founded, which is a public, specialized technical body attached to the Ministry of the Environment of Peru in charge of environmental control throughout the Peruvian territory. This body began its auditing activities in 2010.

21. The abovementioned agency has lawyers who are dedicated precisely to the environment. If that area of law were as dangerous as the legal expert states, no one would be dedicated to it. In addition, many lawyers in various public and private institutions throughout Peru do it.

22. It is important to note that the OEFA held between December 5 and 7, the forum "Workshop on Litigation Culture of Environmental Disputes" and had the participation of judges from the Judiciary of various instances. Members of the Peruvian Judicial Branch that supposedly would not provide guarantees to the Plaintiffs are precisely those who participate in events with the purpose of increasing awareness of

---

[4] https://twitter.com/Poder_Judicial_/status/859770514147074048.

Avenida Arequipa 2327
Lince, Lima 14, Perú
Central: (51-1) 200-9090
Teléfono: (51-1) 422-6152, (51-1) 441-4166
E-mail: estudio@castillofreyre.com
www.castillofreyre.com

Estudio Mario Castillo Freyre

the typical characteristics of environmental legislation and the guiding principles of environmental judicialization for a fair, efficient and transparent process.[5]

**B. WITH REGARD TO THE COMMENTS OF MR. GASTÓN FERNÁNDEZ CRUZ**

**III. Peruvian jurisdiction is appropriate**

23. The first thing to remark is that, in my opinion, Peruvian jurisdiction is the appropriate governing law and it is because it corresponds to the correct application of the competition rules that are regulated in the Private International Law Section of the Peruvian Civil Code.

24. As I previously explained in my statement dated October 16, 2017, the rule of numeral 2 of Article 2058 of the Peruvian Civil Code,[6] provides that the Peruvian courts are competent to resolve any claim for civil liability that have as their goal the alleged damages that may be produced by Yanacocha and that they are trying to impute to the Defendants for supposed direction or a lack of supervision.

25. Thus, it is not understood why a witness who has the status of a legal expert can claim that the "proper authority" should not coincide with the competent jurisdiction. In legal matters, the appropriate should always be equivalent to that which is based on the applicable regulatory framework. In the case of jurisdiction, the notion of adequate charter is always synonymous with jurisdiction and, therefore, in this case, the adequate jurisdiction is Peruvian.

26. In this line, the opinion of the legal expert in this regard does not comply with law, while not focusing on objective legal rules, but on subjective judgments —

---

[5] http://www.oefa.gob.pe/noticias-institucionales/oefa-realiza-evento-internacional-sobre-judicializacion-de-controversias-ambientales.

[6] Article 2058.- "The Peruvian courts have competence to hear complaints arising from the exercise of patrimonial content actions even against persons domiciled in a foreign country, in the following cases:
[...]
2.When actions related to obligations that must be executed in the territory of the Republic or that arise from executed contracts or of facts carried out in said territory are dealt. In the case of civil actions arisen from crimes or faults perpetrated or whose results have occurred in the Republic, this competence is considered exclusive.
[...]".

7

Avenida Arequipa 2327
Lince, Lima 14, Perú
Central: (51-1) 200-9090
Teléfono: (51-1) 422-6152, (51-1) 441-4166
E-mail: estudio@castillofreyre.com
www.castillofreyre.com

Estudio Mario Castillo Freyre

and, in my opinion, inaccurate and exaggerated— of what qualifies as difficulties that the Plaintiffs would have to face.

### IV. Regarding the substantive and procedural considerations made by the legal expert of the Plaintiffs

27. On the other hand, it should be noted that the considerations that the legal expert formulates in section E.1 of his Report[7] exaggerate the complexity of the Peruvian Judicial System. It should be noted, as an example, that the exhort as a judicial instrument is not needed in all the cases in which one party is a person domiciled in a foreign country. And is not needed because all parties, foreign or not, are obligated by law to give all information and documentation the court request and in most cases they comply in good faith avoiding the application of the exhort.

28. It's worth to mention, also as an example, that the reference made by the expert about the restriction regulated on numeral 3 of article 229 of Peruvian Civil Procedural Code wouldn't apply in this case for the members of the Chaupe Family who are included in the judicial procedure as the Plaintiffs. Under Peruvian judicial system, every person included as Plaintiff or Defendant is able to give their declaration as part of exercising their defense right, even if some of those persons are related to each other. Therefore, it would be inaccurate and damaging even suggest that the Plaintiffs will face a harder situation than the Defendants because of the way Peruvian Justice System works. The rules are the same for both parties.

29. It must be highlighted that those expert considerations, regardless of being overstatements, do not constitute elements that should be part of the assessment that leads to determine the suitability of the jurisdiction.

30. I am convinced that the legal expert's assessment in this point focuses on circumstances that, in no way, can cause the Peruvian courts to be deprived of the competence that corresponds to them by law. Especially, when those circumstances are not factors that can be qualified as impediments for the Peruvian courts to solve the case according to law.

31. Consequently, the first of the elements, that is, the fact that the legal system does not recognize jurisprudence as a source of law, except in cases where a ruling has

---

[7] All references are done in regards of the Spanish version of the Report of Mr. Fernández Cruz. It should be noted that the English version of that Report has a different numeration than its Spanish counterpart.

8

Avenida Arequipa 2327
Lince, Lima 14, Perú
Central: (51-1) 200-9090
Teléfono: (51-1) 422-6152, (51-1) 441-4166
E-mail: estudio@castillofreyre.com
www.castillofreyre.com

Estudio Mario Castillo Freyre

been granted the status of a binding precedent, is not, in any way, an element to assess. The Peruvian legal system as well as, for example, Italian and French, is part of the Roman-Germanic legal tradition (Civil Law); therefore, it is natural to follow parameters different from those of the American courts that are governed by the Common Law. This, however, does not diminish the merits of the mode in which it operates, nor does it collide with the possibility of obtaining a decision according to law.

32. The language or the evidentiary material are not elements that deprive the jurisdiction of the Peruvian courts of validity, nor can it be qualified as an obstacle to obtain a fair ruling.

33. Regardless of whether the Defendants are domiciled outside of Peruvian territory, the facts alleged as support for the claim and the supposed damages suffered by the Chaupe family would have occurred in Peruvian territory; therefore, all the evidentiary proceedings surrounding it should necessarily be done in Peru. All the documents related to these events that occurred in Peru are in Spanish.

34. Additionally, the legal expert of the Plaintiffs remarks the time and investment costs imposed by an official translation required by Article 241 of the Peruvian Civil Procedure Code, when the relevant thing is that the rule seeks to protect legal security, precisely for safeguarding due process. In that line, those costs are justified and cannot be described as a real obstacle that would allow the Peruvian courts to be deprived of the jurisdiction that corresponds to it by law.

35. I think that the procedural considerations set forth in section E.2 of his Report do not constitute arguments on which the removal of legal jurisdiction can be justified. The manner in which the judicial process is regulated in the Peruvian legal system and the fact that, in the opinion of the expert, this arises in a long and complex evidentiary process, do not grant any claimant the power to sue in a jurisdiction that, when established in a different legal tradition and have different rules, it seems better.

36. Notwithstanding the foregoing, I consider it important to note that any jurisdiction other than the Peruvian one would face substantive difficulties. Therefore, in addition to the fact that they would need Peruvian judicial assistance to act on the evidentiary means related to all the facts and damages that the Plaintiffs allege have occurred within the Peruvian territory, they would have to apply Peruvian law. This is

9

Avenida Arequipa 2327
Lince, Lima 14, Perú
Central: (51-1) 200-9090
Teléfono: (51-1) 422-6152, (51-1) 441-4166
E-mail: estudio@castillofreyre.com
www.castillofreyre.com

Estudio Mario Castillo Freyre

so, in application of Article 2097 of the Peruvian Civil Code,[8] about which I have referred to in my October 2017 Affidavit.

### V. Regarding the considerations referred to the structural problems of the Peruvian Judicial System

37. On the other hand, I should point out that, in my opinion, the legal expert of the Plaintiffs overstates the defects of the Peruvian Judicial System.

38. The Peruvian judicial system, like any other judicial system in the world, is imperfect, but in no way can such imperfections lead to the suggestion that it would be unfeasible for the Plaintiffs to obtain justice in the Peruvian courts. Insinuate something like that is very serious, because in essence this suggests that in Peru it is impossible to obtain justice. As a practicing lawyer who has 24 year experience in litigating cases in Peru, cases in which the ruling has not taken into account who the parties are, but instead has focused on the facts and the law, I refuse to accept that insinuation.

39. In any case, I must emphasize that competition is not determined by comparing judicial systems to establish which is faster, less expensive or has fewer imperfections. Neither the Plaintiffs nor the Defendants can be forced to withdraw from their legal jurisdiction (in this case, Peruvian courts by application of numeral 2 of article 2058 of the Peruvian Civil Code), because the other one thinks that there is a judicial system that better protects their interests.

### VI. The analysis made by the legal expert regarding the legality or validity of the possessory defense mechanisms is not based on a real knowledge of the facts

40. To conclude, I should point out that, in my opinion, the analysis made by the legal expert of the Plaintiffs in subparagraph F of his report regarding Defendants' possessory defense has no legal value because, strictly speaking, the facts are not evaluated.

---

[8] Article 2097.- "Non-contractual liability is regulated by the law of the country where the main activity that causes the damage is carried out. In case of liability for omission, the law of the place where the alleged responsible should have acted is applicable.
If the law of the place where the damage occurred considers the agent responsible, but not the law of the place where the activity or omission that caused the injury occurred, the first law is applicable, if the agent had to foresee the production of the damage in said place, as a result of its act or omission".

Avenida Arequipa 2327
Lince, Lima 14, Perú
Central: (51-1) 200-9090
Teléfono: (51-1) 422-6152, (51-1) 441-4166
E-mail: estudio@castillofreyre.com
www.castillofreyre.com

Estudio Mario Castillo Freyre

41. Thus, the mere reading of the legal opinion of the expert in this regard, allows to notice that he has no real and true knowledge of the facts and supports his assessment of the circumstances in which the Defendants exercised their possessory defense mechanisms in that "which has been informed"; and that such matter "which has been informed" does not include essential details.

42. Among those essential details without which it is not possible to assess the legality or validity of the possessory defense mechanisms, are the time and circumstances in which each of them has been exercised. The legal expert never refers to those moments and is limited to presuming (wrongly) that all have been exercised almost at the same time and for the same reason.

43. Taking as reference the Statement of Javier Augusto Velarde Zapater (Vice President and General Manager of Incorporate Affairs of Newmont, which has been provided by you), dated November 22, 2017, I can affirm that any analysis of the legality and the validity of the exercise of the out-of-court and judicial possession defense that the Defendants have made must take as a presupposition that such defenses have obeyed differentiated situations. Each situation had certain peculiarities that led Defendants, as holders of those mechanisms of possessory defense, to decide to exercise such possessory mechanism that they considered most appropriate for the protection of their right of possession.

44. More basic, the analysis of the expert does not take into account that during the period between 2001 and 2011, only the Yanacocha staff occupied the property. Moreover, in his Statement, the expert does not even refer to the fact that this property included two plots and that the conflicts that have led to the exercise of the different mechanisms of defense of possession have not been supported by the occupation and/or disturbance of the possession of a single area of those plots. As has been explained by the declaration of Javier Velarde Zapater, the possessory defenses have been executed by Yanacocha in the Southern Parcel, in its condition of possessionaire of that particular plot. The civil action "interdicto de retener" has been initiated by Yanacocha with regards to the Southern Parcel. There is no restriction to exercise possessory defenses in an area in which a legal action of "interdicto de retener" has been initiated.

45. In this framework, as the real facts were not clear to the legal expert (Fernandez Cruz) the conclusions of the expert regarding the mechanisms of possessory defense should be classified as unfounded speculation. And, simply, the legality and validity of the exercise of a possessory defense mechanism cannot be questioned without assessing the concrete facts in which this mechanism has been exercised.

11

Avenida Arequipa 2327
Lince, Lima 14, Perú
Central: (51-1) 200-9090
Teléfono: (51-1) 422-6152, (51-1) 441-4166
E-mail: estudio@castillofreyre.com
www.castillofreyre.com

ESTUDIO MARIO CASTILLO FREYRE

I declare, under penalty of perjury under the law of the United States of America, that this statement is true and correct based on my professional opinion as a Peruvian lawyer and is based on the information obtained through the study and analysis of the relevant documentation. This Declaration is signed on December 10, 2017, in Lima, Peru.

Mario Castillo Freyre

12

Avenida Arequipa 2327
Lince, Lima 14, Perú
Central: (51-1) 200-9090
Teléfono: (51-1) 422-6152, (51-1) 441-4166
E-mail: estudio@castillofreyre.com
www.castillofreyre.com

## CERTIFICATE OF SERVICE

I, Elena C. Norman, hereby certify that on December 11, 2017, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Misty A. Seemans, Esquire
>Public Defender's Office
>820 North French Street, 3rd Floor
>Wilmington, DE 19801
>*misty@earthrights.org*
>
>*Attorney for Plaintiffs*

I further certify that on December 11, 2017, I caused the foregoing document to be served via electronic mail upon the above-listed counsel and on the following:

>Marco Simons, Esquire
>Rick Herz, Esquire
>Marissa Vahlsing, Esquire
>Maryum Jordan, Esquire
>Tamara Morgenthau, Esquire
>EarthRights International
>1612 K Street, NW, Suite 401
>Washington, DC 20006
>*marco@earthrights.org*
>*rick@earthrights.org*
>*marissa@earthrights.org*
>*maryum@earthrights.org*
>*tamara@earthrights.org*
>
>*Attorneys for Plaintiffs*

01:22584818.1

.

|  |  |
|---|---|
| Dated:  December 11, 2017 | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
|  | */s/  Elena C. Norman*<br>Elena C. Norman (No. 4780)<br>Robert M. Vrana (No. 5666)<br>Rodney Square<br>1000 N. King Street<br>Wilmington, Delaware 19801<br>*enorman@ycst.com*<br>*rvrana@ycst.com*<br><br>*Attorneys for Defendants* |

2